Case No. 24-5218 United States of America v. All Petroleum-Product Cargo Onboard the M-T Arina with International Maritime Organization No. 9189952 and All Petroleum-Product Cargo Onboard the M-T NOFOS with International Maritime Organization No. 9258014 Alphan-Peper-Puñaco Avalanche Mr. Santin for the Avalanche Ms. Allen for the Avalanche Mr. Santin Thank you Good morning Good morning. May it please the Court, Michael Santin on behalf of Aspen, the appellant in this case, and the claimant in the proceeding below This case is about the limits of civil forfeiture of foreign assets There are two limits in this case, both as it relates to lack of U.S. nexus The first is based on the text of the civil forfeiture statute at issue 18 U.S.C. 981A1G1 That statute expressly requires that any federal crime of terrorism be committed against the United States, its citizens or residents, or their property The amended complaint does not plausibly allege that the NAOC's federal crime of terrorism was committed against the United States, its citizens or residents, or their property And the second comes from the underlying material support statute, Section 2339B That statute provides extraterritorial jurisdiction over a Section 2339B offense where it occurs in or affects foreign commerce, and that's foreign commerce with the United States And again, the amended complaint does not plausibly allege that the NAOC's Section 2339B offense occurred in or affected foreign commerce with the United States So those are the two arguments I'm going to focus on, as well as the government's alternative source of influence theory So starting with the first point, that the amended complaint does not plausibly allege that the federal crime of terrorism, the NAOC's federal crime of terrorism, was against the United States, its citizens, or their property This comes directly from the statute at Issue 981A1G1 The express language is that it requires a federal crime of terrorism to be committed, quote, against the United States, citizens or residents of the United States, or their property That language is an express element of the statute Are you familiar with any case that actually applies that as an independent requirement on top of otherwise showing a federal crime of terrorism? That actually applies the against the United States language as imposing an additional burden on the government? One way or the other, I just haven't seen a case that does that When I say it, I mean my civil forfeiture cases that mean these are default judgments I just think this is frankly a fairly novel issue that we're dealing with here But the idea that it's a burden on the government, it has to be because it's an express element of the statute And so I don't think there's any way to view this case where you would read out this crucial provision of the statute Well, maybe this is where you were going, but the government says even assuming it is a requirement, it's satisfied here Given the longstanding nature of the IRGC's activities and your presumed knowledge and awareness of that So what's your factual answer? Yeah, so a couple things First, it's clear that it's really the NIOC's crime that's at issue here And the NIOC, we'd all agree, is not accused of any direct attack against the United States There's no allegation that the NIOC's support of the IRGC here was with the specific purpose of it being used against the United States In other words, there's no statement from the NIOC or the IRGC that says here's some material support for you Please use it to kill Americans or to commit some crimes here There's nothing about the timing There are terrorist organizations whose primary objective is to kill and maim and hurt the great Satan, which is the United States Yes, but when one reads the amended complaint, it's clear that that organization, the IRGC, is involved in a lot of activities within Iran and around the country And this is coming from the government's complaint It defends the country's political system It engages in violence throughout the Middle East It engages in human rights abuses within Iran and around the country I'm not defending any of those activities But to say that the support to the IRGC was necessarily for use against the United States is not an inference that can be drawn from the amended complaint in light of all of these other activities that are taking place It's a pretty odd rule for us to announce, right? If you're a terrorist organization that only targets the United States, you're in a worse position than if you also target a whole lot of other people, including your own citizens Yes, but the issue here is not the IRGC It's not their assets that are at issue Certainly, if it was the IRGC assets, then it would be very easy for the United States to forfeit them There would be no argument here We don't represent the IRGC We're certainly not standing up and defending their actions The issue is this is an asset of the NIOC And it's the NIOC's actions, their conduct in providing material support that must be against the United States And to be clear, it's not enough for it to be against the United States' interests And that's the problem with the government's complaint And I'm going to read from paragraph 29 just briefly It says, the NIOC's use of foreign commerce to fund and provide material support to the IRGC and IRGCQF thwart U.S. interests And that's what the complaint talks about, U.S. interests In another place, they talk about paragraph 28 that the actions of the NIOC are contrary to the interests of the United States That's not the language of the statute It's got to be against the United States which can only be interpreted as the soil, the land of the United States Its residents or citizens, in other words, U.S. citizens or residents or the property of the United States citizens It can't be the interests of the United States And that's how they read it No, that's not how they read it That's how they've planned it And of course, here we are in a civil forfeiture case where there's a heightened pleading standard Under Supplemental Rule G2F, the government must state, quote, sufficiently detailed facts And they haven't done that They've alleged that the actions of the NIOC are against the interests of the United States And that is not enough There's an independent provision here as it relates to a crime that's committed against the United States It's citizens or residents or their property Can I just ask about the foreign commerce argument? Maybe this is oversimplifying But I thought in PARC, we said we basically apply the interstate effects tests that we have from cases like Wickard v. Filburn And so it struck me that this case is as if Mr. Filburn was growing and consuming within Ohio $500 million worth of wheat every year and said, well, I wasn't doing it in interstate commerce And I think we all know how that would come out Why isn't that exactly what's going on here? I think it depends on what the it is here The it is, you may be entirely correct It is limited to whatever activities constitute NIOC's material support of IRGC And we don't have a number for that, but it's sure a lot And again, Mr. Filburn consuming $10,000 worth of wheat for much less hundreds of millions doesn't seem like a close case A couple of things, I appreciate that question First, I do think it's important to be clear about what the it is And the it is limited to the NIOC's Section 2339B offense That's the conduct that, according to the statute, must have the effect on foreign commerce with the United States So it's not the IRGC's activities It's not the Iranian regime's activities It's not the NIOC's general commercial activities like what they're doing with Venezuela or Iran It's got to be their specific offense here And when we look at the amended complaint what does it say on that very issue? First of all, most of the amended complaint, or a lot of it, is not even about the NIOC It's about the conduct of the IRGC So if I think it is a plausible inference that at least, say, $1 million worth of NIOC's business goes and is delivered to the IRGC and that constitutes part of this offense of terrorism then would you agree that that is enough to constitute an effect on foreign commerce with the United States? No, because what Your Honor has just said says nothing about what the effect is on foreign commerce And that needs to be alleged with facts And that's what we don't have We have an amended complaint that talks largely about the actions of the IRGC When it talks about the actions of the NIOC part of it is just general what it does generally, its commercial activities but nothing about the effect of its Section 2339B's offense that offense, that conduct, its effect on foreign commerce I think in paragraph 29 there's one sort of confusing and sort of sentence, a conclusory sentence that these activities undertaken in foreign commerce plainly have a domestic effect on the United States and its domestic commerce That's it A single, conclusory, vague sentence But there are no facts alleged about what that effect would be And remember, we're dealing with Iranian oil The United States doesn't trade in Iranian oil There's no allegation here that the United States is engaged in the illegal trading of Iranian oil So there's nothing here about how that NIOC conduct has an effect on foreign commerce What about paragraph 72? It seems to be trying to make the basic economic point that if Iran does or does not inject massive amounts of oil into global markets it will affect the price of oil Right, and I direct Your Honor's attention to the beginning of the third, or the second sentence of that paragraph because after talking about the NIOC it says, as the IRGC and IRGCQF's wrongful actions affect the United States commerce So once again, the amended complaint is talking about the actions of the IRGC and their effect, the actions, their conduct and how it affects foreign commerce We're not here talking, that's not the issue here And the government talks about the Sealed Case I want to bring that up because I know they put a lot of eggs in that basket and I know that Judge Henderson was involved in that case and wrote a brilliant concurrence in it But the point of the Sealed Case and why it's so easily distinguished from this case is because the extraterritorial jurisdictional provision in Sealed Case expressly said that one may consider the effect of the terrorist organization that the entity that's receiving material support The specific language in Sealed Case is there's jurisdiction over an offense where the offense, the prohibited drug activity or the terrorist offense occurs in or affects foreign commerce So in Sealed Case, we have jurisdiction based on, in this case, if that were the case the actions of the IRGC We don't have that, we have a section that's just limited to the actions of the NAOC And the other really important distinction between our case and Sealed Case is that in Sealed Case, the defendant admitted that his actions affected U.S. commerce No party here has admitted that the NAOC's conduct affected U.S. foreign commerce or U.S. commerce One aspect of Sealed Case that might hurt you, though is that the effect was inferred from the size of the drug transactions, right? That's true, and what's hard about Sealed Case is that we don't know which countries we're talking about and how close they are to the United States But I think there is an inference drawn in Sealed Case and if it's an inference where there's actually facts alleged that the United States is involved in the drug trade So we know that illegal drugs that are being moved in the Sealed Case has an effect on the United States because the United States is engaged in the illegal drug market And here, we're dealing with Iranian oil Again, the United States is, by law, is not allowed to trade in Iranian oil There's no allegation that the United States is illegally doing that But even that factual distinction aside I think the two important distinctions are that the underlying criminal statute in Sealed Case expressly allowed jurisdiction based on the actions of the terrorist group that receives material support And second, that really, that there had been an admission by the defendant that his actions affected U.S. commerce, which we don't have here It's a fair point that the terrorist offense language in the Sealed Case statute broadens things a little bit Well, broadens things relative to the statute here But still keyed to a specific offense, right? And yet, we seem to have no trouble just saying a lot of drugs are involved and that affects commerce and that's close enough I guess I don't read it that way And to the extent there's a, the courts are suggesting there's like a drug exceptionalism or kind of that drugs are a certain way I read the cases, yes, there's a lot of drugs involved Let's try it this way This is the easiest case in the world against you if one is allowed to apply the aspect of WICCR that allows going from what Mr. Filburn is doing to growing wheat in the aggregate substantially affects interstate commerce Does the support here in the aggregate substantially affect foreign commerce? Like, obviously And you're saying that's the wrong inquiry because the statute, not the foreign commerce clause but the statute focuses on the offense Right, I think that's one thing And I also think that And that's what I'm wondering The sealed case statute is offense specific in the same way And yet, we have the result that we have And I think it's also important to recognize that unique procedural posture of this case because it's actually evaluating an amended complaint not looking at the, say, constitutionality or the scope of the statute directly And really, that's the issue here What facts have been alleged in this complaint for which there is a heightened standard And it doesn't make those allegations or factual allegations I don't know if it could The government was The district court dismissed the or granted the motion dismissed the first time around gave the government leave to amend They made, frankly, on that very issue the foreign effects issue They made very minor changes in the court It was enough for the district court below But there aren't factual allegations And that's what we need here So I think this posture is also unique here I realize I'm over time though I'm happy to continue to answer questions Was there a statutory question in part or was it pure foreign commerce clause? Because there we did specifically embrace the aggregation aspect Of a U.S. citizen, mind you And the fact that he was a U.S. citizen was crucial to the decision in that case All right, we'll give you a couple minutes in reply Ms. Allen Thank you, Your Honor Katherine Allen on behalf of the United States I would just like to pick up with the discussion of the In re Sealed case just to make very clear why we think that that case is relevant here even though the extraterritorial jurisdictional provisions there were different According to Aspen, the extraterritorial jurisdictional provision in this case where it says affects foreign commerce should be read basically as a term of art that refers to Congress's authority under the foreign commerce clause In re Sealed case, what this court did was it addressed the scope of the foreign commerce clause And it held that criminal conduct very similar to the conduct that's at issue here satisfied that test So we think that this case fits very comfortably within this court's decision in Sealed case There, the question was whether the defendant's drug trafficking that was used to support foreign terrorist organizations affected U.S. commerce And the court looked to both the effect of the drug trafficking itself as well as the effect of the terrorism And I think here, both of those aspects are equally present I think their best argument has to focus not on an effects test because the statute on its basis affects foreign commerce It has to be the word offense which says don't aggregate all of the support from the beginning of time to these U.S. focused terrorist entities Just look at this one charged offense and ask whether this one It's like an anti-wicked aggregation principle that comes from the word offense Well, your honor, the material support offense that's alleged here is an ongoing offense because NIAC, the complaint alleges that NIAC is the institutional mechanism that is the primary source of funding for these two terrorism or foreign terrorist organizations that routinely attack the United States and have done so for decades Is it not limited to the oil that was on these two ships? Absolutely not, your honor The forfeiture provision at issue here states that all assets, foreign or domestic of an entity that's engaged in planning or perpetrating a federal crime of terrorism are subject to forfeiture to the United States And the predicate crime is material support That's correct I'm sorry, how is that charged? What was the material support? Well, your honor, the complaint alleges a number of ways in which NIAC provides material support to the NIAC and its subsidiaries provide material support to the IRGC and IRGCQF Beyond just this oil? Yes, your honor And Aspen, you know, in the district court didn't even contest that when you look beyond this particular oil and the all assets language makes clear that we're not talking about just this particular oil We're talking about NIAC's material support in general Over time Over time And again, that Is there a time limit on that in the complaint? Is there, in terms of the fence? We're really just talking about everything NIAC has ever done I'm not sure, your honor But if About what particular time limit there would be But just to point you to one specific allegation in the complaint and in the accompanying documents This is paragraph 40 of the complaint and supplemental appendix 21 It says that in the spring of 2019 alone NIAC provided material support by with respect to 10 million barrels of oil sold for over half a billion dollars and 4 million barrels of condensate sold for over a quarter billion dollars I mean, that's just one instance that's in the complaint And there's no question that this vast scale of of trade in illicit oil putting that onto the black market affects the US trade in oil as well And again we don't just need to look at that because also there's the fact that by providing this material support to the IRGC and IRGCQF NIAC is supporting is enabling those two organizations to commit terrorism attacks against the United States And that's why the terrorism is important because by funding those organizations being the primary source of funding to those organizations you can look to their terrorism as well And that's what this court did in Ray Seale's case was to look to both the the effect of the drug trafficking activity as well as the terrorism of the foreign terrorist organizations Just on the calculation requirement do you think we've decided exactly how this intent requirement works or do you think are you asking us to essentially adopt the Second Circuit's test from the Awan case? The idea that this needs to be calculated to affect government conduct or U.S. government conduct? Well, I think a lot of courts of appeals have adopted the Awan test I don't know that the specific issue I guess I think the element is clearly satisfied I guess I'm not sure what two different versions of the test there are It's more than just knowledge that this money is going to go to support terrorist attacks It's we need to be able to infer an intent that those terrorist attacks occur That's correct I mean, this court has said that it's an intent requirement and I think just to be clear we're not talking about a one-off donation to the IRGC We're not talking about opening a couple of social media accounts for people who sympathize with the IRGC What we're talking about here is being the primary source of funding the institutionalized role for this entity is to be the source of funding for these terrorist organizations So I think it's very reasonable to infer based on the facts alleged in the complaint that the material support offense is calculated to influence the conduct of government by intimidation and coercion And there's the other thing I would point to again is there are a number of allegations in the complaint alleging direct coordination between NIOC officials and the IRGC So again, it's not like some arm's length donation as in some of the cases or doing business with a third party We're talking about a lot of direct cooperation and coordination and so that further supports the inference that they provided material support with the intent that it would be calculated to influence the U.S. government If there are no further questions we urge the Court to affirm All right, thank you On the calculated to issue I know we didn't I didn't talk about it previously and it seems that the government is kind of drawing or making assumptions that of course it must have been done for this purpose or another purpose But that's not enough here and it's similar to the against the United States provision but it's a slightly different argument It is a specific intent What was the specific intent of the NIOC when material support was provided to the IRGC And we don't know This complaint does not tell us It doesn't provide any facts There are no statements from the NIOC Here's why we're providing support to you There are no statements from the IRGC Here's why we've received support for it There's nothing about the timing of that transfer that would say it was done for this specific purpose And as to the question I know Judge Garcia asked about kind of timing The statute uses sort of the gerund form of perpetrating So there has to be some contemporaneity to it And I agree with Judge Kaskas or at least the suggestion from his question that you cannot aggregate all of these different things and say oh there must be an effect So what is your view on To me this comes down to the word offense on the predicate charged material support Which I had maybe wrongly been assuming well the charged offense is the oil on the two ships and that's more like what Filburn himself is consuming not everyone in the world who consumes weed but maybe that's not right No that is right it has to well not well I mean your colleague says the charged offense is more acts of material support I don't disagree that the amended complaint says in a fairly vague way in a non-specific way that there has been material support just beyond the particular oil that's at issue here Why can't they do that? Sort of make the case this is a pattern in practice this is institutionalized what's the oil on these ships is just one instance of a much broader pattern of support Because the effect on foreign commerce is linked to the specific offense so they have to say they have to identify the particular offense which is hardly done here it's so vague and say this particular offense so let's use the example of it's institutionalized support over time well but that doesn't work with the contemporaneity of the statute that has to be at around the time of the seizure of the oil we can't look at events that happened in the past we have to look at events that are happening right now Let's just take it out of these facts it's almost just confusing that the asset seized is oil that the fact is if the complaint said in the past five years NIOC has engaged in you know, 500 million dollars in business in transporting oil and in other ways all of that goes to materially supporting IRGC that would be the offense and then they might say hey look we seized this ship that has oil on it but that's what we're getting at there's a distinction between the asset seized and the offense, right and you have a lot of maybe compelling arguments about that the offense is narrow but if it were alleged to the way that I just said then we would be focused on that 500 million dollars of activity the events and whether that activity affects interest foreign commerce does that do you disagree with that legal setup? I think I do because I don't know how there can be a material support that is this ongoing campaign it's almost like the court suggesting a conspiracy I don't think that's really not what's been pled here what's been pled is a specific offense I understand the government is suggesting that specific offenses in the past five years the IRGC sorry NIAC has given the IRGC 500 million dollars then we would ask does that has that amount has that activity does that have an effect on foreign commerce, right right and to be clear couple things first there would have to be proof or allegations factual allegations specific factual allegations the amended complaint that said that that provision of 500 million dollars had an effect on foreign commerce yes and it's also interesting to note that there's actually no allegations here really of even as it relates to like the specific oil add issue that there actually was this transfer of money they talk about this kind of service but they don't really say that money is actually being provided I think the government is being fairly loose in the way they're talking about the NIOC as the primary funder that's actually not what the amended complaint says so I take the court's hypothetical I want to think about it some more but it's pretty far afield from the amended complaint that we have here all right thank you
judges: Henderson; Katsas; Garcia